### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | **Chapter 11** |
| **REPLOGLE HARDWOOD FLOORING** ) | **Case No. 17-bk-12172** |
| **COMPANY, LLC** *et al.*, ) | **Judge Croom** |
| ) | **Jointly Administered** |
| **Debtor.** ) | |

### MOTION FOR AUTHORITY TO SELL OR TRANSFER ASSETS PURSUANT TO 11 U.S.C. §363 FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

Comes the Debtors, Replogle Hardwood Flooring Company, LLC and Replogle Enterprises G.P. (the "Debtors"), pursuant to Bankruptcy Rules 6004(c) and 11 U.S.C. § 363, and moves the Court for authority to sell substantially all assets to Fox Hardwood Company, LLC or its assignee ("Buyer"), a creditor herein, free and clear of all liens, claims, and encumbrances, pursuant to 11 U.S.C. §363 and would show the Court as follows:

1.    On September 29, 2017 (the "Petition Date"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the Middle District of Tennessee for relief under Chapter 11 of the Bankruptcy Code. The Debtor's cases were administratively consolidated by order of this Court on November 1, 2017. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors are continuing to operate their businesses as debtors-in-possession. No trustee or examiner has been appointed in this case, nor has any official creditors' or equity security holders' committee been formed.

2.    This Court has jurisdiction over this case and this motion pursuant to 28 U.S.C. § 1334 and pursuant to 28 U.S.C. § 157(b)(2)(A), this is a core matter. Venue in this case and of

this motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The Debtors do not have sufficient ongoing cash flow to successfully operate these businesses through Chapter 11. It is necessary to obtain debtor-in-possession financing, or to immediately sell the assets of the Debtors. If the Debtors are unable to quickly sell its assets or obtain significant post-petition financing, it will be unable to meet its basic obligations such as payroll, insurance, and taxes, and will be forced to cease operations.

4. The Debtors previously filed a motion to approve debtor-in-possession financing, which was met with an objection by one of the two secured creditors. Based upon that objection, the proposed DIP lender withdrew his financing offer. Since that time, the Debtors have worked to identify a buyer for the assets and to negotiate a fair market sales price.

5. By this Motion, the Debtors seek authority to sell, convey, transfer, assign and/or deliver to the Buyer all of the personal property of the Debtors, plus the personal property owned by Nathan and Betty Replogle individually[1] but used in the operation of the Debtors' businesses (the "Purchased Assets"), as identified in the proposed letter of intent attached hereto as Exhibit A (the "LOI").[2] The Purchased Assets represent substantially all of the assets of the Debtors.

6. The Buyer has agreed to purchase the Purchased Assets in exchange for payment of $900,000, $500,000 for the equipment used in the new sawmill line and $400,000 for the balance of the assets.[3] The Buyer wishes to purchase the Purchased Assets in order to continue

---

1 Nathan and Betty Replogle will be filing a similar motion in their individual case, seeking approval of this sale.
2 The LOI also contemplates that Nathan and Betty Replogle will lease certain real estate to the Buyer, with a possible sale of that real estate for $400,000 following an environmental inspection. Nathan and Betty Replogle, individually, will file a motion to approve the lease contemplated by the LOI. The sale of these assets is contingent upon the approval of that lease.
3 The LOI proposes to purchase assets from three different estates: Nathan and Betty Replogle, Replogle Hardwood Flooring, LLC and Replogle Enterprises, G.P. While the Buyer has not broken the sales price out among those three estates, it is irrelevant because all three estates are debtors on the obligations to Centennial Bank and Tennessee BIDCO, the secured creditors holding senior interests in the Purchased Assets.

2

the operations of a hardwood floor manufacturing facility, and it intends to continue employing most if not all of the Debtors employees.  This is very important to the Debtors as their operation is one of the largest employers in rural Henry, Tennessee.

7. Most of the Purchased Assets are purportedly subject to liens.  Upon information and belief, Centennial Bank claims a first priority lien on the equipment used in the new sawmill line, and Tennessee BIDCO claims a first priority lien on the majority of the other Purchased Assets.[4]  Centennial Bank's secured loan is believed to be in the amount of $863,342.78, and Tennessee BIDCO's secured loan is believed to be in the amount of $3,514,467.29.

8. Upon the completion of the sale as approved by the Court, valid, perfected, and unavoidable liens, claims and encumbrances shall attach to the sale proceeds to the same extent, and in the same priority, as the pre-petition liens, claims and encumbrances.  This includes, but is not limited to, the liens on the Purchased Assets asserted by Centennial Bank and Tennessee BIDCO.

9. Section 363(b)(1) of the Bankruptcy Code provides that a debtor, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. §363(b)(1). Accordingly, the Court may authorize the sale other than in ordinary course of business of all of a Chapter 11 debtor's assets under Section 363(b)(l) when a sound business purpose dictates such action. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (approving sale of radio station's assets where debtor could not meet its payroll and other operating expenses); *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re New Era Resorts, LLC*, 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999) (sale of Chapter 11

---

[4] It is anticipated that the Buyer will provide a breakdown of the sales price prior to the sale.  Some of the $400,000 may be for the purchase of unencumbered assets of the Debtors' estates.

debtor's only asset approved pursuant to Section 363(b)); *In re Allison*, 39 B.R. 300, 301-302 (Bankr. D.N.M. 1984) ("The clear weight of authority authorizes the sale of all or substantially all of the debtor's assets pursuant to § 363(b) in a Chapter 11 proceeding even absent a disclosure statement, plan and vote of the creditors."). Given the Debtor's inability to continue operating and servicing its debt going forward, the Debtors maintain that such sound business purpose exists here.

10.     Section 1146(c) of the Bankruptcy Code states that the "transfer . . . or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax." 11 U.S.C. § 1146(c). Courts have broadly construed this provision to include sales and transfers that occur outside of a Chapter 11 plan of reorganization and before or after confirmation of a Chapter 11 plan. *See In re Jacoby-Bender, Inc.*, 40 B.R. 10, 16 (Bankr. E.D.N.Y. 1984), *aff'd*, 758 F.2d 840 (2d Cir. 1985) (post-confirmation sale of assets exempted from tax by § 1146(c) of the Bankruptcy Code); *see also, City of New York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.)*, 54 B.R. 950, 951 (E.D.N.Y. 1985) (holding that § 1146(c) applied to preconfirmation sale of property when "the transfer of property was essential to the confirmation of a plan"). In so holding, courts have focused on whether the sale and transfer is "necessary to the consummation of the plan." *Jacoby-Bender*, 758 F.2d at 842; *In re Beulah Church of God in Christ Jesus, Inc.*, 316 B.R. 41, 51 (Bankr. S.D.N.Y. 2004) (finding transfers integral to confirmation of plan to be exempt from tax under § 1146(c) of the Bankruptcy Code because "Congress did not intend to impose an arbitrary and illogical temporal distinction on sales necessary or integral to a Chapter 11 plan."); *In re Permar Provisions, Inc.*, 79 B.R. 530, 534 (Bankr. E.D.N.Y. 1987) (applying § 1146(c) of the Bankruptcy Code to sale of property prior to filing of Chapter 11 plan where a

4

plan could not have been confirmed absent sale); *but see, In re Hechinger Inv. Co. of Delaware, Inc.*, 355 F.3d 243 (3d Cir. 2003); *In re NVR, LP*, 189 F.3d 442 (4th Cir. 1999); *In re 310 Assocs., L.P.*, 282 B.R. 295 (S.D.N.Y. 2002).

11. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtor requests that any order approving the sale or transfer of the customers be effective immediately by providing that the 14-day stay under Bankruptcy Rule 6004(h) is waived.

12. This Sale Motion shall be provided to all creditors and parties in interest in these proceedings and shall be served on all persons pursuant to Bankruptcy Rule 6004(c) by first class mail addressed to the business address of such persons notwithstanding Bankruptcy Rule 9014. The Debtors submit that no further notice need be given or service need to be made.

WHEREFORE, the Debtor moves the Court for an entry of an Order:

a. Approving the form and manner of notice of sale proposed by the Debtors in this Motion;

b. Approving the sale of the Purchased Assets (as defined herein) free and clear of all interests; and

c. Granting such other and further relief as is appropriate.

DATED: November 10, 2017

        Respectfully submitted:

        /s/ Phillip G. Young
        Phillip G. Young, Jr.
        Thompson Burton PLLC
        6100 Tower Circle, Ste. 200
        Franklin, TN 37067
        615-465-6008
        phillip@thompsonburton.com

        Attorneys for the Debtors

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served through the Court's ECF system on all parties requesting notice, and served via United States Mail on all parties listed on the attached mailing matrix, this the 10th day of November, 2017.

        /s/ Phillip G. Young
        Phillip G. Young, Jr.