# EXHIBIT B

IN THE CIRCUIT COURT OF HENRY COUNTY, TENNESSEE

TENNESSEE BUSINESS AND INDUSTRIAL
DEVELOPMENT CORPORATION,
    *Plaintiff,*

v.

GILES NATHAN REPLOGLE; BETTY
CARROLL REPLOGLE; REPLOGLE
ENTERPRISES, A TENNESSEE GENERAL
PARTNERSHIP; REPLOGLE HARDWOOD
FLOORING COMPANY, LLC; MELISSA
R. WRIGHT; L-B-R, LLC; AND FHL
INDUSTRIES, LLC;
    *Defendants.*

Docket No. _____
JURY DEMANDED

## COMPLAINT

For its Complaint against Defendants, Plaintiff Tennessee Business and Industrial
Development Corporation states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Tennessee Business and Industrial Development Corporation ("TN
BIDCO") is a Tennessee corporation with its principal place of business at 2550 Meridian Blvd.,
Suite 203, Franklin, Tennessee 37067.

2.    Defendant Giles Nathan Replogle is an individual residing in Henry County,
Tennessee and may be served with process at 400 Deer Haven Lane, Henry, Tennessee 38231.

3.    Defendant Betty Carroll Replogle is an individual residing in Henry County,
Tennessee and may be served with process at 400 Deer Haven Lane, Henry, Tennessee 38231.

4.    Defendant Replogle Hardwood Flooring Company, LLC is a Tennessee limited
liability company with a principal address at 9875 Highway 79 S., Henry, Tennessee 38231, and
may be served with process through service on its registered agent, Phil Clements, at 405
Railroad Avenue, Henry, TN 38231.

FILED 4-11-19 AT 12:37 A.M.
MIKE WILSON, CLERK
BY Kathy Cram DC

5.      Defendant Replogle Enterprises is a Tennessee General Partnership. Defendant Giles Nathan Replogle is a partner of Replogle Enterprises and may be served with process at 400 Deer Haven Lane, Henry, Tennessee 38231.

6.      Defendant Melissa R. Wright is an individual residing in Henry County, Tennessee, and may be served with process at 60 Deer Haven Lane, Henry, Tennessee 38231.

7.      Defendant L-B-R, LLC, is a Tennessee limited liability company and may be served with process through service on its registered agent, Melissa Wright, at 2040 Lumber Road, Henry, Tennessee 38231-3790.

8.      Defendant FHL Industries, LLC, is a Tennessee limited liability company and may be served with process through service on its registered agent, Mark Carver, at 150 3rd Avenue South, Suite 1100, Nashville, Tennessee 37201-2037.

9.      This Court has jurisdiction over the subject matter of this Complaint pursuant to Tenn. Code Ann. § 16-10-101 *et seq.*

10.     Venue is proper in Henry County, Tennessee pursuant to Tenn. Code Ann. § 16-10-101 *et seq.*

## FACTUAL BACKGROUND

## I.    The Loan Obligations and Documents.

11.     On April 15, 2010, Defendants Giles Nathan Replogle, Betty Carroll Replogle, Replogle Enterprises, G.P., and Replogle Hardwood Flooring Company, LLC, (collectively referred to herein as "***Debtors***") obtained a loan from TN BIDCO in the original principal amount of $4,800,00.00 (the "***Loan***") as evidenced by that "Adjustable Rate Note With Prepayment Penalty And Security Agreement" (the "***Note***") dated April 15, 2010.

12.     A true and correct copy of the Note is attached hereto as **Exhibit 1** and incorporated herein by reference.

13.    To secure the repayment of the Debtors' obligations under the Loan Documents[1], Debtors executed that "Security Agreement," (the "*Security Agreement*") dated April 15, 2010, to secure the payment of the principal and interest on all obligations under the Note.

14.    A true and correct copy of the Security Agreement is attached hereto as **Exhibit 2** and incorporated herein by reference.

15.    To further secure the repayment of the Debtors' obligations under the Loan Documents, Debtors executed and delivered to TN BIDCO that certain "Deed of Trust, Assignment of Rents and Security Agreement," dated April 15, 2010 (the "*Deed of Trust*").

16.    A true and correct copy of the Deed of Trust is attached to this complaint as **Exhibit 3** and is incorporated in this paragraph by reference.

## A.    The Mortgaged Property (TN BIDCO's Collateral)

17.    Pursuant to the Deed of Trust, Debtors conveyed in trust, for the benefit of the TN BIDCO ("a" through "i," the "*Mortgaged Property*"), which includes, *inter alia*, but is not limited to, the following:

> (a) Grantors' right, title and interest in and to the real property described in Exhibit A which is attached hereto and incorporated herein by reference (the "*Land*") together with (i) any and all buildings, structures, fixtures, improvements, alterations or appurtenances, replacements, and additions, now or hereafter situated or to be situated on the Land (collectively the "*Improvements*"); (ii) all rents, income, rights, estates, powers, privileges and interests of whatever kind or character appurtenant or incident to the foregoing; and (iii) all right, title and interest of Grantors, now owned or hereafter acquired, in and to (1) all common area and other use rights, tenements, hereditaments, streets, roads, alleys, easements, rights-of-way, licenses, rights of ingress and egress, vehicle parking rights and public places, existing or proposed, abutting, adjacent, used in connection with or pertaining or appurtenant to any of the Land or the Improvements; (2) any strips or gores between the Land and abutting or adjacent properties; and (3) all options to purchase the Land or the Improvements or any portion thereof or interest therein, and any greater estate in the Land or the Improvements; and (4) all water and water rights or shares of stock evidencing water rights, timber, crops and mineral interests on or pertaining to the Land (the

---

[1]      As defined below.

Land, Improvements and other rights, titles and interests referred to in this clause (a) being herein sometimes collectively called the "*Premises*");

(b) Including, but not being limited to all, fixtures, equipment, office systems and equipment, machinery, furniture, furnishings, appliances, inventory, goods, building and construction materials, supplies, and articles of personal property, of every kind and character, tangible and intangible (including software embedded therein), motors, heating, plumbing, lighting, water-heating, cooking, refrigerating, incinerating, ventilating and air conditioning equipment, lighting, telecommunications systems, security systems, vehicles, fork-lifts and accessories thereto, sawmills, storm doors and windows, shades, rugs, carpeting, awnings, blinds, drapes, and linoleums, and property of like nature, now owned or hereafter acquired by Grantors, which are now or hereafter attached to or situated in, on or about the Land or the Improvements, or used in or necessary to the complete and proper planning, development, use, occupancy or operation thereof, or acquired (whether delivered to the Land or stored elsewhere) for use or installation in or on the Land or the Improvements, and all renewals and replacements of, substitutions for and additions to the foregoing (the properties referred to in this clause (b) being herein sometimes collectively called the "*Accessories*," all of which are hereby declared to be permanent accessions to the Land);

(c) All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversions, and remainders whatsoever, in any way belonging, relating or appertaining to the Mortgaged Property or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Grantors.

(d) All (i) plans and specifications for the Improvements; (ii) Grantors' rights, but not liability for any breach by Grantors, under all commitments (including any commitments for financing to pay any of the Secured Indebtedness, as defined below), insurance policies (or additional or supplemental coverage related thereto, including from an insurance provider meeting the requirements of the Loan Documents or from or through any state or federal government sponsored program or entity), Swap Transactions (as hereinafter defined), contracts and agreements for the design, construction, operation or inspection of the Improvements and other contracts and general intangibles (including but not limited to payment intangibles, trademarks, trade names, goodwill, software and symbols) related to the Premises or the Accessories or the operation thereof; (iii) deposits and deposit accounts arising from or related to any transactions related to the Premises or the Accessories (including but not limited to Grantors' rights in tenants' security deposits, deposits with respect to utility services to the Premises, and any deposits, deposit accounts or reserves hereunder or under any other Loan Documents (hereinafter defined) for taxes, insurance or otherwise), rebates or

refunds of impact fees or other taxes, assessments or charges, money, accounts, (including deposit accounts), instruments, documents, promissory notes and chattel paper (whether tangible or electronic) arising from or by virtue of any transactions related to the Premises or the Accessories, and any account, securities account or deposit account (including, without limitation, reserve accounts and escrow accounts) from which Grantors may from time to time authorize Administrative Agent to debit and/or credit payments due with respect to the Loan or any Swap Transaction, all rights to the payment of money from the counterparty under any Swap Transaction, and all accounts, deposit accounts and general intangibles, including payment intangibles, described in any Swap Transaction; (iv) permits, licenses, franchises, certificates, development rights, commitments and rights for utilities, and other rights and privileges obtained in connection with the Premises or the Accessories; (v) leases, rents, royalties, bonuses, issues, profits, revenues and other benefits of the Premises and the Accessories; (vi) as-extracted collateral produced from or allocated to the Land including, without limitation, oil, gas and other hydrocarbons and other minerals and all products processed or obtained therefrom, and the proceeds thereof; and (vii) engineering, accounting, title, legal, and other technical or business data concerning the Property, including software, which are in the possession of Grantors or in which Grantors can otherwise grant a security interest;

(e) All (i) accounts, accounts receivable, and proceeds (cash or non-cash and including payment intangibles) of or arising from the properties, rights, titles and interests referred to above in this Granting Clause including but not limited to proceeds of any sale, lease or other disposition thereof, proceeds of each policy of insurance (or additional or supplemental coverage related thereto, including from an insurance provider meeting the requirements of the Loan Documents or from or through any state or federal government sponsored program or entity) relating thereto (including premium refunds), proceeds of the taking thereof or of any rights appurtenant thereto, including change of grade of streets, curb cuts or other rights of access, by condemnation, eminent domain or transfer in lieu thereof for public or quasi-public use under any law, and proceeds arising out of any damage thereto; (ii) all letter-of-credit rights (whether or not the letter of credit is evidenced by a writing) Grantors now have or hereafter acquire relating to the properties, rights, titles and interests referred to in this Granting Clause; (iii) all commercial tort claims Grantors now have or hereafter acquire relating to the properties, rights, titles and interests referred to in this section; and (iv) other interests of every kind and character which Grantors now have or hereafter acquire in, to or for the benefit of the properties, rights, titles and interests referred to above in this Granting Clause and all property used or useful in connection therewith, including but not limited to rights of ingress and egress and remainders, reversions and reversionary rights or interests; and if the estate of Grantors in any of the property referred to above in this Granting Clause is a leasehold estate, this conveyance shall include, and the lien and security interest created hereby shall encumber and extend to, all other or additional title, estates, interests or rights

which are now owned or may hereafter be acquired by Grantors in or to the property demised under the lease creating the leasehold estate;

(f) All inventory (including all goods, merchandise, raw materials, incidentals, office supplies and packaging, timber, and hardwood flooring) held for sale, lease, resale, or furnished or to be furnished under contracts of service, or used or consumed in the ownership, use or operation of the Land, the improvements or fixtures and personal property, and all documents of title evidencing any part or any of the foregoing and all returned or repossessed good arising from or relating to any sale or disposition of inventory;

. . .

(h) Any property, real estate or personal property, acquired after the execution of this Deed of Trust, and any additions, accessions, and extensions, fixtures, or improvements to said property. . . .

18.    The Mortgaged Property is TN BIDCO's Collateral and is referred to herein as either the Mortgaged Property or Collateral.

19.    TN BIDCO has a security interest in the Insurance Policies relating to the Mortgaged Property, which is TN BIDCO's collateral.

20.    TN BIDCO has a security interest in the proceeds from any claims or losses relating to the Insurance Policies.

21.    The Note, Security Agreement, Loan Agreement, Financing Statement, Deed of Trust, and related loan documentation are collectively referred to herein as the ***Loan Documents***.

## B.    Perfection of TN BIDCO's Security Interests

22.    On or about April 15, 2010, to perfect TN BIDCO's liens and security interests granted pursuant to the Deed of Trust, the Deed of Trust was properly recorded in the Register of Deed for Henry County, in Record Book 305, Page 164; in the Register of Deeds for Benton County, Tennessee, in Record Book 196, Page 610; and in the Register of Deeds for Carroll County, Tennessee, Trust Deed Book 595, Page 216.

23.    To provide further notice and perfect TN BIDCO's liens and security interests under the Loan Documents, TN BIDCO caused to be filed and recorded a: (a) UCC-1 Financing Statement on April 23, 2010 with the Tennessee Secretary of State as UCC document number

310023948; (b) UCC-3 Continuation Statement on March 11, 2015 with the Tennessee Secretary of State as UCC document number 422899558; (c) UCC-1 Financing Statement on May 17, 2010 with the Tennessee Secretary of State as UCC document number 110022588; and (d) UCC-3 Continuation Statement on March 9, 2015 with the Tennessee Secretary of State as UCC document number 422884867 (the "*Financing Statement*").

  24. A true and correct copy of the Financing Statement is attached to this complaint as **Collective Exhibit 4** and is incorporated in this paragraph by reference.

  25. As described in the Financing Statement, TN BIDCO has a security interest in Debtors' personal property including, but not limited to, insurance proceeds.

### C. The Loan Documents and Insurance Proceeds

  26. Pursuant to paragraph 6 of the Security Agreement, Debtors assigned to TN BIDCO the insurance policies and proceeds of such policies relating to the Mortgaged Property.

  27. Paragraph 6 of the Security Agreement provides:

> Debtor shall maintain all Collateral in good condition, pay promptly all taxes, judgments or charges of any kind levied or assessed thereon, keep current all rent due on premises where Collateral is located, and maintain insurance on all Collateral against such hazards, in such amounts and with such companies as Secured Party may demand. Such insurance policies shall be furnished to the Secured Party. Debtor hereby assigns to Secured Party and proceeds of such policies and all unearned premiums thereon, and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name on all proofs of loss, drafts, checks and any other documents necessary to accomplish such collections, and any persons or entities making payments to Secured Party under the terms of this paragraph are hereby relieved absolutely from any obligation to see to the application of any sums so paid.

  28. Article II of the Deed of Trust, which is entitled Covenants and Agreements as to Mortgaged Property, contains the parties' rights and obligations with respect to insurance policies and proceeds.

  29. Paragraph 2.2 of Article II provides as follows:

Grantors shall, at Grantors' sole cost and expense, obtain and maintain in some company or companies (having a Best's rating of A or better) approved by Beneficiary:

(a) Comprehensive public liability insurance covering claims for bodily injury, death, and property damage, with such minimum limits as Beneficiary shall, from time to time, specify; and

(b) If any of the Mortgaged Property is within an area known as a "special flood hazard area" as defined in the Flood Disaster Protection Act of 1973, a Standard Flood Insurance Policy on the Mortgaged Property as required by the Act or in the amount of the Note, whichever is greater; and

(c) Hazard insurance upon the Improvements and Tangible Personal Property, insuring against loss by fire and all other hazards covered by extended coverage and special extended coverage endorsements (including but not limited to loss by windstorm hail, flood, earthquake, tornado, explosion, riot, aircraft, smoke, vandalism, malicious mischief and vehicle damage) as Beneficiary, in its sole discretion, shall from time to time require, all such insurance to be issued in such form, with such deductible provision, and for such amount (which shall, in any event be at least equal to the full replacement value of the improvements) as shall be satisfactory to Beneficiary; and

(d) Such other insurance as the Beneficiary may, from time to time, reasonably require by notice in writing to the Grantors.

All required insurance policies shall provide for not less than thirty (30) days prior written notice to the Beneficiary of any cancellation, termination, or material amendment thereto. Grantors will cause all policies of hazard insurance to be payable to Beneficiary pursuant to a standard mortgagee clause acceptable to Beneficiary; and Grantors will cause all liability insurance policies to name Beneficiary as an additional named insured, if Beneficiary so requires. In the event of damage to or destruction of the Mortgaged Property or Improvements by fire or other casualty, the net proceeds of the insurance shall be applied upon the Obligations in such manner as the Beneficiary may elect; or, at the option of the Beneficiary, such proceeds may be released to Grantors to be used to restore such property to its former condition. Any insurance policies furnished the Beneficiary shall become its property in the event the Beneficiary becomes the owner of the Mortgaged Property by foreclosure or otherwise. The Beneficiary is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies, and to collect and receive the proceeds from any such policy or policies.

30.    Pursuant to Section 2.2 of the Deed of Trust, Debtors agreed to obtain certain insurance upon the Mortgaged Property to be made payable to TN BIDCO.

31.     The Insurance Policies and such proceeds relating to the Insurance Policies are TN BIDCO's collateral.

## II.   Debtors Flagrant Attempts to Avoid Loan Obligations

### A.   Debtors File a Lawsuit Against TN BIDCO in 2015—resulting in a judgment against Debtors

32.     In 2015, TN BIDCO began to foreclose on its collateral or mortgage property due to the Debtor's failure to pay his monthly loan payments.

33.     Instead of allowing the foreclosure process to proceed, on October 9, 2015, Debtors filed a Verified Complaint against TN BIDCO in the Circuit Court of Henry County, Tennessee.

34.     The Debtors' claims against TN BIDCO were for: (1) an injunction to allow the sale of equipment, which was collateral held by TN BIDCO; (2) for compensatory damages; (3) for a judgment deeming the loan from TN BIDCO to the Debtors to be satisfied; (4) an injunction prohibiting TN BIDCO from foreclosing on the loan and (5) for an award of the Debtors' costs and attorneys' fees.

35.     Mike Abelow of the law firm Sherrard & Roe, PLC represented the Debtors in the state court litigation.

36.     On April 12, 2017, TN BIDCO obtained a judgment in the state court litigation against the Debtors.

37.     A true and correct copy of the registered state court judgment is attached to this complaint as **Exhibit 5** and is incorporated in this paragraph by reference.

### B.   Debtors File Bankruptcy in 2017 to Further Their Efforts to Avoid Paying TN BIDCO

38.     After defending itself in frivolous state court litigation brought by the Debtors, TN BIDCO began to foreclose on its collateral again pursuant to the Loan Documents.

39.    TN BIDCO also began the process of executing on its judgment lien against the Debtors.

40.    Debtors wanted to "mediate" a potential settlement of the dispute.

41.    TN BIDCO, acting in good faith, attempted to mediate a potential resolution of the dispute with the Debtors.

42.    But Debtors showed their true intentions by filing for bankruptcy just 6 months after TN BIDCO received a judgment against the Debtors.

43.    In late September and early October 2017, Debtors filed Chapter 11 bankruptcies in the Western District of Tennessee—just 6 months after TN BIDCO received the referenced judgment against Debtors..

## C.    Debtors' Side Deals with Defendant FHL and Melissa Wright during the bankruptcy cases

44.    During the bankruptcy process, Debtors manufactured a sale of the collateral to a supposed third-party under the guise that it was an arm's length transaction and in the best interest of the Creditors, including TN BIDCO.

45.    Mike Abelow of the law firm Sherrard & Roe, PLC, who represented the Debtors in the state court litigation, also represented the third-party purchaser—Defendant FHL Industries, LLC—in the bankruptcy proceedings and sale of the assets.

46.    The bankruptcy sale—which did not disclose all the Debtors' assets or side-deals between the Debtors and Defendants—was approved on December 29, 2017.

47.    As discussed below, the side-deals and concealed assets demonstrate a pattern by the Debtors and Defendants of attempting to hinder, delay, or defeat TN BIDCO's entitlement to its Collateral pursuant to the Loan Documents.

### a.    Equipment "Buy-Back" by Debtors

48.    On December 12, 2017, Individual Debtors and FHL Industries, LLC, entered into a handwritten contract in which Individual Debtors would buy-back some of the very assets (i.e., equipment) being sold pursuant to the bankruptcy sale.

49.    Specifically, the Debtors agreed to pay $100,000.00 in 36-monthly installments (approximately, $2,777.78 per month) to Defendant FHL in exchange for designated pieces of equipment sold pursuant to the bankruptcy, which were formerly used in the Debtors' business operations.

50.    The equipment that was allegedly sold In the December 12, 2017 agreement is TN BIDCO's collateral.

51.    On information and belief, since January 11, 2018, the Debtors have been making the monthly payments to Defendant FHL, using assets that are TN BIDCO's collateral pursuant to the Loan Documents.

### b.    The Undisclosed Insurance Claim and Transfer of Proceeds

52.    During the bankruptcy proceedings, on or about October 25, 2017, one of the shops or improvements to the real property collateral—a part of the Mortgaged Property— suffered substantial damage as a result of a fire.

53.    As a result, a loss occurred under the Insurance Policies relating to the Mortgaged Property.

54.    On information and belief, in January 2018, as a result of insurance claims made due to damages caused by the fire at the shop, Debtors or one of their affiliates received a check from the loss, totaling $170,000.00 (the "***Insurance Proceeds***").

55.    Contrary to the Loan Documents, Debtors did not disclose the existence of the loss or Insurance Proceeds to TN BIDCO.

56.    Debtors did not disclose the existence of the loss or Insurance Proceeds to the Bankruptcy Court.

COMPLAINT

57.    Before receiving the Insurance Proceeds, however, on December 12, 2017, Debtors and Defendant FHL Industries' (and its affiliates)—who were represented by Replogle's former attorney—entered into a handwritten contract concerning the Insurance Proceeds from the fire that damaged the Mortgaged Property.

58.    A true and correct copy of the handwritten contract is attached as **Exhibit 6.**

59.    The handwritten contract is signed by Defendant Debtor Giles Nathan Replogle, Defendant FHL Industries' owners—Colley Fox, Samuel Fox, Tommy Fox—and Debtors' agent, Kim Johnsonius.

60.    The handwritten contract states that "FHL will receive insurance money for burned shop, up to one hundred thousand dollars ($100,000). Any insurance money for the burned shop exceeding $100,000 shall go to Nathan and Betty Replogle."

61.    The insurance policies and such proceeds from any claims or losses under the policies from the burned shop is TN BIDCO's collateral and property.

62.    Debtors did not convey any of the Insurance Proceeds to TN BIDCO.

63.    Debtors did not disclose the existence of the Insurance Proceeds to TN BIDCO.

64.    Section 2.2 of the Deed of Trust requires that the proceeds of the Insurance Check be paid to the Creditor, TN BIDCO.

65.    Debtors did not convey or pay the Insurance Proceeds to TN BIDCO.

66.    On information and belief, Debtors fraudulently conveyed $100,000.00 of the $170,000.00 to Defendant FHL Industries.

67.    On information and belief, Debtors fraudulently conveyed the remaining portion of the insurance claim— $70,000.00—to his daughter, Defendant Melissa Wright and/or Debtors' new business entity, Defendant L-B-R, LLC.

68.    On information and belief, no consideration was paid to Defendant Giles Nathan Replogle nor the Debtors for the transfer of the Insurance Proceeds to Defendant FHL Industries, Defendant Wright, or Defendant L-B-R, LLC.

## CAUSES OF ACTION

### I.    Count I:   Fraudulent Transfer

69.    The allegations of the foregoing paragraphs are incorporated herein by reference.

70.    TN BIDCO is a "creditor" as that term is defined in Tenn. Code Ann. § 66-3-302(4).

71.    Defendants Giles Nathan Replogle, Betty Carroll Replogle, Replogle Enterprises, and Replogle Hardwood are "debtors" as that term is defined in Tenn. Code Ann. § 66-3-302(6).

72.    Defendant Melissa Wright is an "insider" as that term is defined in Tenn. Code Ann. § 66-3-302(7).

73.    Defendant L-B-R, LLC, is an "insider" as that term is defined in Tenn. Code Ann. § 66-3-302(7).

74.    As described above, TN BIDCO has a "lien"[2] against or an interest in the Mortgaged Property, which includes the Insurance Proceeds.

75.    TN BIDCO's perfected judgment lien is a "lien" under Tennessee law, too.

76.    As described above, TN BIDCO has a "claim"[3] to the Insurance Proceeds.

77.    Section 2.2 of the Deed of Trust requires that the proceeds of the Insurance Check be paid to the Creditor, TN BIDCO.

78.    The proceeds of the Insurance Check have not been paid to the TN BIDCO.

79.    TN BIDCO's claim against Debtors arose before the transfer of the Insurance Proceeds to Defendant FHL Industries, Melissa Wright, and L-B-R, LLC.

80.    Debtors and Defendants were aware of TN BIDCO's claim at the time of the transfers of the Insurance Proceeds.

---

[2]        The term "lien" is used herein as defined in Tenn. Code Ann. § 66-3-302(8).
[3]        The term "claim" is used herein as defined in Tenn. Code Ann. § 66-3-302(3).

81.    At the time of the transfer of the Insurance Proceeds, the Defendants had knowledge of TN BIDCO's claim against Debtors and the Insurance Proceeds at the time of the transfer.

82.    Debtors transferred the Insurance Proceeds with the actual intent to hinder, delay, and defraud TN BIDCO.

83.    Defendants accepted transfer of the Insurance Proceeds with knowledge of TN BIDCO's claim and with the actual intent to assist Debtors to hinder, delay, and defraud TN BIDCO.

84.    The transfer of the Insurance Proceeds was made to insiders as to Defendants Melissa Wright and L-B-R, LLC.

85.    Debtors and Defendants concealed the transfer from TN BIDCO.

86.    Debtors' transfer of the Insurance Proceeds to Defendant FHL Industries was fraudulent as to TN BIDCO because Debtors made the transfer with actual intent to hinder, delay, or defraud TN BIDCO as Creditor.

87.    Alternatively, Debtors' transfer of the Insurance Proceeds to Defendant FHL Industries was fraudulent as to TN BIDCO because Debtors made the transfer without receiving reasonably equivalent value in exchange for the transfer and had debts beyond the Debtors' ability to pay as they became due.

88.    Debtors' transfer of the Insurance Proceeds to Defendants Melissa Wright and L-B-R, LLC was fraudulent as to TN BIDCO because Debtors made the transfer with actual intent to hinder, delay, or defraud TN BIDCO as Creditor.

89.    Alternatively, Debtors' transfer of the Insurance Proceeds to Defendants Melissa Wright and L-B-R, LLC was fraudulent as to TN BIDCO because Debtors made the transfer without receiving reasonably equivalent value in exchange for the transfer and had debts beyond the Debtors' ability to pay as they became due.

## II.   Count II:   Conversion

90.     The allegations of the foregoing paragraphs are incorporated herein by reference.

91.     The Insurance Proceeds are TN BIDCO's property.

92.     Pursuant to the Loan Documents, Defendant Giles Nathan Replogle, Betty Carroll Replogle, Replogle Enterprises, and/or Replogle Hardwood had an obligation to deliver the Insurance Proceeds to TN BIDCO.

93.     Defendant Giles Nathan Replogle, Betty Carroll Replogle, Replogle Enterprises, and/or Replogle Hardwood have intentionally exercised dominion over the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds.

94.     Defendant Giles Nathan Replogle, Betty Carroll Replogle, Replogle Enterprises, and/or Replogle Hardwood wrongfully received the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds per the Loan Documents and under Tennessee law.

95.     Defendant FHL Industries has intentionally exercised dominion over the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds.

96.     Defendant FHL Industries wrongfully received the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds per the Loan Documents and under Tennessee law.

97.     Defendant Melissa Wright has intentionally exercised dominion over the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds.

98.     Defendant Melissa Wright wrongfully received the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds per the Loan Documents and under Tennessee law.

99.     Defendant L-B-R, LLC has intentionally exercised dominion over the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds.

100.     Defendant L-B-R, LLC wrongfully received the Insurance Proceeds in defiance of TN BIDCO's ownership rights in the Insurance Proceeds per the Loan Documents and under Tennessee law.

101.     Alternatively, the Defendants wrongfully converted the Insurance Proceeds, which are TN BIDCO's property, using an agent.

102.     Accordingly, the Defendants are liable to TN BIDCO for damages.

## III.  Count III:  Civil Conspiracy

103.     The allegations of the foregoing paragraphs are incorporated herein by reference.

104.     In transferring the Insurance Proceeds to Defendants FHL Industries, Melissa Wright, and L-B-R, LLC, Debtors acted with the intent to hinder, delay, and defraud TN BIDCO.

105.     Defendants FHL Industries, Melissa Wright, and L-B-R, LLC, accepted the transfer with knowledge of Debtors' fraudulent intent and also with knowledge of Debtors' intent to hinder, delay, and defraud TN BIDCO.

106.     Acting in concert in conducting the transfer of the Insurance Proceeds, Defendants accomplished the unlawful purpose of hindering, delaying, and defrauding TN BIDCO by preventing TN BIDCO from collecting its interest in the Insurance Proceeds under the Loan Documents.

107.     Defendants fraudulent scheme described in this Complaint caused substantial damage to TN BIDCO.

## IV.  Count IV:  Breach of Contract - Deed of Trust

108.     The allegations of the foregoing paragraphs are incorporated herein by reference.

109.     The Deed of Trust constitutes a valid and binding contract between TN BIDCO and Debtors.

110.    Without TN BIDCO's consent, Debtors conveyed the Insurance Proceeds, constituting TN BIDCO's collateral, to Defendants FHL Industries, Melissa Wright, and L-B-R, LLC, in violation of the terms of the Deed of Trust.

111.    TN BIDCO has been damaged by Debtors' breach of the Deed of Trust.

112.    TN BIDCO is entitled to judgment against Nathan Replogle, Betty Replogle, Melissa Wright, and L-B-R, LLC, jointly and severally, and as the alter-egos of Debtor for their breach of the Deed of Trust in an amount to be determined at trial.

## V.    Count V:  Breach of Contract - Security Agreement

113.    The allegations of the foregoing paragraphs are incorporated herein by reference.

114.    The Security Agreement constitutes a valid and binding contractor between TN BIDCO and Debtors.

115.    Without TN BIDCO's consent, Debtors transferred the Insurance Proceeds, constituting TN BIDCO's collateral, to Defendants FHL Industries, Melissa Wright, and/or L-B-R, LLC, in violation of the terms of the Security Agreement.

116.    TN BIDCO has been damaged by Debtors' breach of the Security Agreement.

117.    TN BIDCO is entitled to judgment Debtors, Melissa Wright, and L-B-R, LLC, jointly and severally, and as the alter-egos of Debtors for their breach of the Security Agreement in an amount to be determined at trial.

## VI.  Count VI:  Punitive Damages

118.    The allegations of the foregoing paragraphs are incorporated herein by reference.

119.    Debtors fraudulent transfer of the Insurance Proceeds constitutes a willful and intentional wrong justifying punitive damages.

120.    Debtors willfully and maliciously committed a breach of the Loan Documents by failing to repay to TN BIDCO the funds loaned to Debtors, including the Insurance Proceeds, in violation of the Loan Documents' unambiguous terms.

121.   In breaching the Loan Documents, Debtors intended to defraud TN BIDCO for Debtors' personal benefit.

122.   Defendants FHL Industries, Melissa Wright, and L-B-R, LLC, acted in concert with Debtors for the purpose of defrauding TN BIDCO for Defendants' personal benefit.

123.   Defendants' fraudulent conduct was egregious and malicious, and punitive damages should be assessed to deter Defendants from committing similar acts in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, TN BIDCO respectfully requests that the Court enter judgment against the Defendants in TN BIDCO's favor and respectfully requests that the Court:

A.   Issue proper process requiring the Defendants to respond to the Complaint within the time required by law;

B.   Empanel a jury to try the issues joined in this case;

C.   Grant judgment against the Defendants, jointly and severally, for compensatory, consequential, and incidental damages in an amount to be determined at trial including without limitation pre-judgment interest, post-judgment interest, and attorneys' fees as provided in the Loan Documents;

D.   Grant judgment against the Defendants, jointly and severally, for the full amount of the Insurance Proceeds including without limitation pre-judgment interest, post-judgment interest, and attorneys' fees;

E.   Grant judgment against the Defendants, jointly and severally, for all additional amounts of monies or assets fraudulently transferred or concealed as to which TN BIDCO is entitled to including without limitation pre-judgment interest, post-judgment interest, and attorneys' fees;

F.   Grant TN BIDCO one or more of the following remedies, including without limitation, the remedies available pursuant to Tenn. Code Ann. § 66-3-301 and Title 26: avoidance of the transfers of the Insurance Proceeds as fraudulent transfers; attachment against

the proceeds of the fraudulent transfers, including without limitation cash proceeds and notes

receivable; and/or award to TN BIDCO its reasonable attorneys' fee; and

G.      Grant TN BIDCO such further relief as the Court deems just and proper.

Respectfully submitted,

By: _____

Lewis L. Cobb (#005369)
William J. Hardegree (#034741)
SPRAGINS, BARNETT & COBB, PLC
312 E. Lafayette, P.O. Box 2004
Jackson, Tennessee 38302
Phone:   (731) 424-0461
Fax:      (731) 424-0562
lewiscobb@spraginslaw.com
wjh@spraginslaw.com

***Counsel for Tennessee Business and
Industrial Development Corporation***

## COST BOND

We hereby stand as sureties for the costs of this cause not to exceed $500.00.

By: _____